2004 UT App 260

**Clifford P. LEE, Plaintiff and Appellant,**

v.

**FRANK'S GARAGE & USED CARS, INC., a Virginia corporation; Frank's Garage, a Virginia corporation; Frank's Cars, LLC, a Virginia limited liability company; Frank's Used Cars, a Virginia corporation; Estate of Frank L. Harrell Sr.; Frank Harrell Jr., an individual; and John Does I, Defendants and Appellees.**

No. 20030143–CA.

Court of Appeals of Utah.

July 29, 2004.

---

Kevin M. McDonough, Park City, for Appellant.

Janet Goldstein, Park City, for Appellees.

Before Judges BILLINGS, BENCH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Clifford Lee appeals the trial court's order dismissing his complaint against various Virginia defendants (collectively Dealer) for lack of personal jurisdiction. Lee's appeal challenges the trial court's determination that there were insufficient contacts between Dealer and Utah to support the exercise of personal jurisdiction. We reverse.

## BACKGROUND

¶ 2 Clifford Lee is a Utah resident who purchased a 1970 Pontiac Trans Am (the Car) from Dealer, a Virginia business entity.[1] Lee sued Dealer in Utah, alleging in various causes of action that Dealer tampered with the odometer and/or misrepresented the Car to have approximately 35,000 miles on it when it in fact had substantially more. The

---

1. While we refer to the defendants/appellees collectively as Dealer, there appears to be some dispute between the parties as to the relationship between the various entities. There may be distinctions between the various entities that could affect the jurisdictional analysis, but the trial court did not establish or rely upon those distinctions. Further, the appellees did not file an appellate brief explaining why the various Utah contacts alleged by Lee should not be applied as against any particular defendant. Under these circumstances, we will treat the appellees collectively and analyze jurisdiction under the Utah contacts that Lee has established.

facts of the parties' transaction are as follows.[2]

¶ 3 In or about September 2000, Dealer advertised the Car for sale in a nationally circulated automobile trade magazine. The advertisement stated that the Car had been driven approximately 35,000 miles, and indicated an asking price of $15,000. Lee responded to the advertisement in October 2000 by telephoning Dealer from Utah. Lee spoke with Kevin Pilon, an agent of Dealer, who made additional representations about the Car including a reaffirmation of the mileage and representations that the Car was a "classic car," "a collector's item," and in "excellent condition." Lee expressed a desire to purchase the Car, and Pilon sent Lee wire transfer instructions by facsimile.

¶ 4 Over the next several months, Lee wired $15,000 to Dealer in two separate wire transfers. Paperwork and signatures were exchanged between the parties by facsimile and other means, including Dealer's provision of an "Odometer Disclosure Statement" to Lee. Dealer then arranged to ship the Car to Lee in Utah. The Car arrived in February 2001.

¶ 5 Upon receipt of the Car, Lee had it inspected by a mechanic. The mechanic determined that someone had tampered with the odometer, and estimated that the actual mileage on the Car exceeded 100,000 miles. Lee then sued Dealer in Utah. Upon Dealer's motion, the trial court dismissed the complaint for lack of personal jurisdiction. The trial court determined that it could not exercise jurisdiction over Dealer because, in light of the minimal contacts between Dealer and Utah, such an exercise would not satisfy the requirements of federal due process and would offend traditional notions of fair play and substantial justice.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Lee argues that Dealer had sufficient contacts with Utah to support the exercise of personal jurisdiction. Where "a pretrial jurisdictional decision has been made on documentary evidence only, an appeal from that decision presents only legal questions that are reviewed for correctness." *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1121 (Utah 1992).

## ANALYSIS

■ ¶ 7 The proper method to determine whether personal jurisdiction exists over a nonresident defendant involves two considerations. *See In re W.A.*, 2002 UT 127, ¶ 14, 63 P.3d 607, *cert. denied*, 538 U.S. 1035, 123 S.Ct. 2092, 155 L.Ed.2d 1065 (2003). "First, the court must assess whether *Utah law* confers personal jurisdiction over the nonresident defendant." *Id.* "Second, assuming Utah law confers personal jurisdiction over the nonresident defendant, the court must assess whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *Id.*

■ ¶ 8 Here, the trial court did not address *W.A.'s* first prong. Under the facts alleged by Lee, however, it is clear that Dealer's actions fall within the broad reach of Utah's long-arm jurisdiction statute. *See* Utah Code Ann. § 78-27-24 (2002).[3] Dealer's negotiation of the sale and delivery of the Car to Utah clearly constitutes "contracting to supply services or goods in this state" under subsection (2). *Id.* § 78-27-24(2). The facts as alleged by Lee also suggest that Dealer's actions satisfy the statute under subsection 3—"the causing of any injury within this state whether tortious or by breach of warranty." *Id.* § 78-27-24(3); *see*

---

2. The trial court examined jurisdiction in this matter solely on the affidavits of the parties and did not allow discovery or hold an evidentiary hearing. When personal jurisdiction is determined solely on the parties' affidavits, the plaintiff must only make a prima facie showing. *See Anderson v. American Soc'y of Plastic & Reconstructive Surgeons*, 807 P.2d 825, 827 (Utah 1990). "The plaintiff's factual allegations are accepted as true unless specifically controverted by the defendant's affidavits or by depositions,

but any disputes in the documentary evidence are resolved in the plaintiff's favor." *Id.* Our factual recitation represents an application of these rules to Lee's complaint and the affidavits submitted by both parties.

3. Utah Code Annotated § 78-27-24 (2002) has not been amended since the events giving rise to Lee's suit, and for convenience we cite to the current version of the statute.

*also Clements v. Tomball Ford, Inc.,* 812 F.Supp. 202, 205 (D.Utah 1993) (finding that misrepresentation of the mileage accrued on a truck sold in Utah constituted causing of injury in Utah).

¶ 9 The more difficult question is whether the contacts that Dealer had with Utah will support specific personal jurisdiction without offending due process.[4] The trial court found that they did not. In light of Dealer's knowing negotiation, sale, and delivery of the Car to Lee in Utah, we disagree.

¶ 10 "[T]he Fourteenth Amendment to the United States Constitution permits a court to assert personal jurisdiction over a nonresident defendant where that defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *In re W.A.,* 2002 UT 127 at ¶ 20 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). To determine whether a nonresident defendant has had sufficient Utah contacts to justify personal jurisdiction, "we look to 'the relationship of the defendant, the forum, and the litigation to each other.' " *Starways, Inc. v. Curry,* 1999 UT 50, ¶ 8, 980 P.2d 204 (quoting *Parry v. Ernst Home Ctr. Corp.,* 779 P.2d 659, 662 (Utah 1989)). "[D]ue process is not satisfied by the *quantity* of the contacts with the state, but 'rather upon the *quality* and nature' of the minimum contacts and their relationship to the claim asserted." *Arguello v. Industrial Woodworking Mach. Co.,* 838 P.2d 1120, 1123 (Utah 1992) (quoting *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159–60); *see also Starways,* 1999 UT 50 at ¶ 8.

¶ 11 In reaching its decision that Dealer did not have sufficient Utah contacts to support jurisdiction, the trial court relied heavily on two cases arising in the context of car repairs. In *Marion v. Long,* 72 N.C.App. 585, 325 S.E.2d 300 (1985), the plaintiff was a North Carolina resident who had his car repaired in Georgia. *See id.* at 302. In *Durkin v. Gran Turismo Jaguar,* No. 98–L–101, 1999 WL 1313666, 1999 Ohio App. LEXIS 6120 (Ohio Ct.App. Dec. 17, 1999), a Missouri resident had his car repaired in Ohio. *See id.* at **2. In both cases, the plaintiffs were dissatisfied with the services rendered and sued in their home states. *See Marion,* 325 S.E.2d at 302; *Durkin,* 1999 Ohio App. LEXIS 6120 at *3. In *Marion,* the court found only two contacts between the defendants and North Carolina, an advertisement placed in a national car collector's magazine and the defendants' trip to North Carolina and alleged closing of the repair contract there. *See Marion,* 325 S.E.2d at 303. In *Durkin,* the plaintiff alleged numerous forms of communicative contact between the defendants and Missouri, including advertisements in a magazine of national circulation and numerous "mail, facsimile, and telephonic communications between the parties" over the period that the defendants were in possession of the plaintiff's vehicle. *Durkin,* 1999 Ohio App. LEXIS 6120 at *18. In both cases, the contacts were found to be insufficient to establish specific personal jurisdiction. *See Marion,* 325 S.E.2d at 302–04; *Durkin,* 1999 Ohio App. LEXIS 6120 at **17–20.

¶ 12 The instant case is distinguishable from *Marion* and *Durkin.* In the context of allegedly deficient car repair, the services that form the basis for a defendant's alleged liability are ordinarily performed within a particular state even if the parties to the

---

4. There are two categories of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984). A court exercises specific personal jurisdiction over a defendant "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8. In contrast, general personal jurisdiction "permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For [general] jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state." *Arguello v. Industrial Woodworking Mach. Co.,* 838 P.2d 1120, 1122 (Utah 1992); *see also Helicopteros,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. Although Lee argued both theories of jurisdiction in the trial court, we analyze and decide this case solely on the narrow basis of specific personal jurisdiction.

repair contract reside in different states. As stated in *Durkin*, "the obligations imposed on [the defendants] were to be performed exclusively in Ohio.... [T]he picture that emerges is of a Missouri resident doing business with an Ohio corporation in Ohio, not vice versa." *Durkin*, 1999 Ohio App. LEXIS 6120 at *20. In contrast, under the facts alleged by Lee, this case presents not a Utah resident doing business in Virginia, but rather residents of Utah and Virginia doing business with each other across state lines and in both states.

¶ 13 We find the facts and reasoning of *Clements v. Tomball Ford, Inc.*, 812 F.Supp. 202 (D.Utah 1993), to be more applicable to this case. In *Clements*, Texas auto dealer Tomball Ford sold a vehicle to a Texas auto broker. *See id.* at 204. After passing through several more hands, the vehicle was purchased in Utah by Utah resident Clements. *See id.* Clements subsequently discovered that the vehicle's mileage was incorrect and sued Tomball Ford for odometer fraud in the Utah federal court. *See id.* The *Clement* court found (as do we in the present case) that an out-of-state misrepresentation of accrued mileage on a vehicle ultimately sold in Utah satisfies Utah's long-arm statute because it constitutes the causing of tortious injury in Utah. *See id.* at 205; *see also* Utah Code Ann. § 78–27–24(3) (2002). However, relying on Tomball Ford's unchallenged affidavit, the court also found that the specific defendant had insufficient contacts with Utah to support the exercise of personal jurisdiction consistent with due process requirements. *See Clements*, 812 F.Supp. at 206. Specifically, the court found that "Tomball had sold the truck to [a Texas auto broker], which, to the best of Tomball's

knowledge, did not do business within the State of Utah. In addition, Tomball has apparently not sold used vehicles within Utah, and has not dealt with Utah customers." *Id.* The court concluded that, "[i]n short, Tomball has not purposefully availed itself of conducting activities within Utah." *Id.* (quotations and alteration omitted).

¶ 14 In the present case, Dealer advertised[5] the Car and sold it to Lee as a unique item (a "collector's item") of substantial value. The Car's purported value arose directly from its alleged condition and mileage. Once Lee responded to the advertisement offering the Car for sale, Dealer made representations about the unique qualities of the Car, particularly its low mileage, directly to Lee in a successful attempt to induce Lee to purchase the Car. Lee was a Utah resident, physically in Utah, during these and other communications with Dealer. Once the sale was consummated, Dealer shipped the Car to Utah. Finally, Dealer has not identified any contractual agreements between the parties indicating a forum preference or otherwise structuring the sale solely as a non-Utah transaction.[6] Under these particular facts, we have little difficulty in concluding that Dealer's " 'conduct and connection with [Utah] are such that [it] should reasonably anticipate being haled into court there' " in the event of a dispute arising from the sale of the Car. *Clements*, 812 F.Supp. at 206 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

¶ 15 Additionally, this litigation arises directly from both the sale of the Car and Dealer's contacts with Utah in furtherance of that sale. Analyzing " 'the *quality* and na-

---

5. Two recent Utah cases have found general personal jurisdiction over out-of-state defendants in the context of casino advertising aimed at attracting Utah customers to the border town of Wendover, Nevada. *See Ho v. Jim's Enters., Inc.*, 2001 UT 63,¶¶ 8–10, 29 P.3d 633; *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 929 (Utah Ct.App.1998). Both of these cases involved substantial entanglement between the out-of-state defendants and Utah, including extensive advertising and promotional activities in Utah, ownership or control of Utah property, and the maintaining or listing of telephone numbers in Utah. *See Ho*, 2001 UT 63 at ¶ 9; *Buddensick*, 972 P.2d

at 931. Neither case reached the narrower question of specific personal jurisdiction.

6. The Utah Supreme Court has determined that contractual forum selection clauses will be upheld as fair and reasonable so long as there is some rational nexus between the forum selected and either the parties or the transaction. *See, e.g., Phone Directories Co. v. Henderson*, 2000 UT 64,¶¶ 14–15, 8 P.3d 256. Hence, in this case, Dealer could have contracted for a non-Utah forum if it desired to avoid the potential of litigation in Utah.

ture' of the minimum contacts and their relationship to the claim asserted," it is clear that each and every contact between Dealer and Utah was devoted to the sale of the Car to Lee on the allegedly false premises that give rise to Lee's complaint. *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1123 (Utah 1992) (citation omitted). Ultimately, it is this close relationship between Dealer's contacts with Utah and Lee's causes of action that convinces us of the propriety of Utah exercising specific personal jurisdiction over Dealer in this matter.

## CONCLUSION

¶ 16 Having applied the two-part test enunciated in *In re W.A.*, 2002 UT 127, ¶ 14, 63 P.3d 607, we conclude that Dealer's actions satisfy the requirements of Utah's long-arm statute, *see* Utah Code Ann. § 78-27-24 (2002), and that Dealer's contacts with Utah are sufficient to support the exercise of specific personal jurisdiction without offending due process. Accordingly, we reverse the decision of the trial court and remand this matter for further proceedings.

¶ 17 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge, and RUSSELL W. BENCH, Associate Presiding Judge.